

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

*au ww-250*

August 26, 1947

Honorable Robert S. Calvert
Comptroller of Public Accounts
State of Texas
Austin, Texas

                    Opinion No. WW-238

                    Re: May the Comptroller of Public
                          Accounts issue warrants to pay
                          for a necessary easement and to
                          cover the cost of the plans and
                          specifications involved in the
                          construction of a certain radio
                          building to be built by the
                          Texas Department of Public Safety
Dear Mr. Calvert:          near Midland, Texas?

       You have requested an opinion which involves the issuance of certain warrants which are required in connection with the construction of a radio building by the Texas Department of Public Safety. In your request you have posed the following questions:

     "Please advise if I may issue my warrant in
payment of easement on which the radio building
is to be constructed?

     "Please advise if I may issue my warrant in
payment of the plans and specifications of the
radio building without the State Board of Con-
trol's approval?"

       We shall answer your questions in the order presented.

       Section 22 of Article VI of House Bill No. 140, Acts of the 54th Legislature, Regular Session, 1955, chapter 519, page 1592, which deals with the acquisition of property under the provisions of the General Appropriation Bill, provides, in part, as follows:

     "Except as specifically authorized to do so
by existing statutes, none of the agencies for
which appropriations are made in this Act shall
accept the donation of real property, except

gifts or devises of real property from private sources for the establishment of scholarships, professorships, or other trusts for educational purposes, provided such property will not thereafter require appropriations by the Legislature for operation, maintenance, repair or the construction of buildings; <u>or expend any of the moneys appropriated herein for the purchase of real property without the expressed permission and authorization of the Legislature. . . .</u>"   (Emphasis ours).

House Bill 140, Acts of the 54th Legislature, Regular Session, 1955, chapter 519, page 1499, which provides for the appropriation of funds to the Texas Department of Public Safety for the current biennium, reads, in part, as follows:

"The above appropriations are for salaries, seasonal or contingent help, travel, transportation, automobile maintenance and repairs, gas, oil, tires, etc., bond premiums, office and equipment rentals, storage, repairs, forage, duplicating supplies, printing, telephone and telegraph, postage, stationery, clothing and furnishings, express and freight, drayage, utilities, service materials, office supplies, books, drugs, medical, hospital and laboratory expense, and funeral expense when death results in line of duty.  Also, necessary expenses for operating a law enforcement training school, and miscellaneous operating expenses.  Purchase of equipment, guns, automobiles, aircraft, and any and all other necessary equipment necessary to the enforcement of all laws under the supervision of the Department of Public Safety."

House Concurrent Resolution No. 26, Acts of the 55th Legislature, reads as follows:

"WHEREAS, The Texas Department of Public Safety is desirous of erecting a communications station in the vicinity of Midland, Texas, in order to continue to carry out the Department's statutory duty of providing for the rapid exchange of information concerning the commission of crimes and the detection of violators of the law; and
"WHEREAS, It is necessary to acquire an easement upon property heretofore located and upon which an easement can be acquired for a reasonable expenditure; and

"WHEREAS, There exists sufficient appro-
priations necessary to purchase said easement
and erect such station; and
"WHEREAS, A question has arisen as to whether
the expenditure of such moneys heretofore appro-
priated can be lawfully made without the express
permission and authorization of the Legislature,
due to a restriction upon the purchase of real
property contained in the biennial Appropriation
Bill of the Fifty-fourth Legislature, Regular Ses-
sion, 1955; now therefore, be it
"RESOLVED by the House of Representatives,
the Senate concurring, That the Texas Department
of Public Safety is authorized to expend appro-
priated funds for the purpose of acquiring the
necessary easement to permit the erection, opera-
tion, and maintenance, of such communications
station."

Because of the prohibitions of Section 30 of Article
III of the Constitution of Texas, the above quoted House Con-
current Resolution does not have the status of a law. However,
the Resolution does stand as an avowal of the Legislature's in-
tent. As such, we believe that H.C.R. No. 26, Acts of the 55th
Legislature, clearly indicates that it was the intent of the
Legislature that the provisions of House Bill 140, Acts of the
54th Legislature, Regular Session 1955, chapter 519, page 1499,
should include an expenditure of funds for the purchase of the
easement in question.

For this reason, we are of the opinion that an ex-
penditure of funds for the purchase of an easement upon which a
radio building is to be constructed by the Texas Department of
Public Safety, in the vicinity of Midland, Texas, is authorized
under the provisions of House Bill 140, Acts of the 54th Legis-
lature, Regular Session, 1955, chapter 519, page 1499. We,
therefore, must answer your first question in the affirmative.

Section 1 of the Acts of the 51st Legislature, Regular
Session, 1949, chapter 323, page 606 (Article 681, V.C.S.) pro-
vides, in part:

"The State Board of Control, through its
chief of such division, shall design all public
buildings erected at the expense of the state
where designing is not otherwise provided by law
or by its appropriation bill; but in no instance
shall plans or designs be adopted by the head of
any department, board, institution, or school,

other than the state educational institutions
of higher learning and the Texas Prison System,
and the Texas State Board for hospitals and
special schools, unless such design and plans
have been approved by the Board."

We construe this statute to require the State Board
of Control to design any public building constructed at the
expense of the State; except where the Legislature, by law or
in the particular appropriation bill, has granted some other
State Agency the authority to design the building in question.
We believe that the statute further requires that even if the
plans or designs of the building be exempt under the preceding
exceptions, the plans or designs must be approved by the State
Board of Control prior to their acceptance by the head of any
department, board, institution, or school. The only agencies
exempted from this latter requirement are: the state educa-
tional institutions of higher learning, State Prison System,
and the Texas State Board for Hospitals and Special Schools.

Your request, and the file attached thereto, indicates
that the State Board of Control has not approved the plans and
specifications of the particular building in question.

We believe that this building must of necessity come
within the requirements of Section 1 of Acts of the 51st Legis-
lature, Regular Session, 1949, chapter 323, page 606 (Article
681, V.C.S.). For this reason we must answer your second ques-
tion in the negative.

This opinion is only applicable to the factual situa-
tion presented.

### SUMMARY

The Comptroller of Public Accounts may issue a
warrant to pay for the necessary easement involved
in the construction of a certain radio building to
be built by the Texas Department of Public Safety
near Midland, Texas, but may not issue a warrant to
cover the costs of the plans and specifications for
this same building.

Very truly yours,

WILL WILSON
Attorney General of Texas

By *Wayland C. Rivers Jr*
Wayland C Rivers, Jr.
Assistant

WCR:pf:wb

Honorable Robert S. Calvert, page 5  (WW-238)


APPROVED:

OPINION COMMITTEE

H. Grady Chandler, Chairman
J. C. Davis, Jr.
John Reeves

REVIEWED FOR THE ATTORNEY GENERAL

BY:        Geo. P. Blackburn